JDN

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Deng,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Charles Ryan, et al.,<br><br>　　　　　　Defendants. | No.  CV 19-04589-PHX-JAT (JFM)<br><br>**ORDER** |

Plaintiff Tony Deng, who is confined at the Arizona State Prison Complex-Eyman Special Management Unit I, in Florence, Arizona, brought this pro se civil rights action under 42 U.S.C. § 1983 against Nurse Practitioner (NP) Kendra Avant-Ortiz and Centurion of Arizona L.L.C., the private company contracted with Arizona Department of Corrections (ADC) to provide prisoner health care.  (Doc. 1.)  Before the Court is Deng's Motion for Help, which is construed as a Motion for Preliminary Injunction. (Doc. 23.)  The Court will deny the Motion without prejudice.

**I.    Background**

In his Second Amended Complaint, Deng alleged that he has been denied adequate medical care for his diabetes.  (Doc. 12.)  He stated that he is prescribed five medications, including insulin, to control his diabetes, and he must take the medications every day.  (*Id.* at 11.)  Deng alleged that in August 2019, he submitted a health needs request (HNR) informing NP Ortiz that he was about to run out of his keep-on-person

(KOP) medications; however, he did not receive his medications for over a month, and only after he submitted more HNRs, an informal complaint, and an emergency grievance on the issue. (*Id.*) Deng claimed that NP Ortiz knew how critical diabetes medications are for him, knew that he had not received his necessary medications, and failed to ensure he received the medications. (*Id.* at 12.) Deng further alleged that Centurion did not take corrective action in response to medical staff's failure to provide necessary care, nor does it have an adequate medication re-fill system or procedure in place and, consequently, Deng went 32 days without vital medications. (*Id.*)[1]  Deng sought money damages, declaratory relief, and injunctive relief. (*Id.* at 17.)

On April 15, 2020, Deng filed his Motion for Preliminary Injunction. (Doc. 23.) Deng states that in early April 2020, he again ran out of his diabetes medications, he notified the provider, and he was told by medical staff that the provider had been notified, but no medications have been provided to Deng. (*Id.* at 1.) As of the date he filed his Motion, Deng had been without his KOP medications for weeks. (*Id.* at 2.) Deng is especially concerned about the delay in medications because people with diabetes are at higher risk for COVID-19, and there have been eight confirmed COVID-19 cases in his complex. (*Id.*) He seeks an injunction ordering Defendants to provide his necessary medications and to transfer him to a medium custody unit where he can receive adequate medical care. (*Id.*)

**II.     Preliminary Injunction Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an

---

[1] Deng's Eight Amendment medical care claims against NP Ortiz and Centurion are set forth in Count Three of his Second Amended Complaint. (Doc. 12.) On screening, the Court dismissed the other Counts and Defendants. (Doc. 14.)

extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" version of the sliding-scale test, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

When considering whether injunctive relief is warranted, a court may consider evidence or developments that postdate the pleadings. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). A court's factual findings and legal conclusions made in a ruling on a

motion for preliminary injunction are not binding at trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

### III. Relevant Facts

Deng is diagnosed with Type 2 diabetes, as well as glaucoma and hypertension. (Doc. 12 at 11, 18; Doc. 28-3 at 2–3.) He is treated under the chronic-care program provided by Centurion. (Doc. 12 at 11.) Deng is prescribed five different medications to keep his diabetes and other chronic conditions under control: Timolol and Latanoprost eye drops; Atorvastatin; Metformin (anti-diabetic medication); Lisinopril (high blood pressure medication); and Glipizide (anti-diabetic medications). (*Id.*; Doc. 28-2 at 2; Doc. 28-4 at 3.) He is also prescribed Aspirin. (*Id.*) Deng has taken these medications for the last 20 years. (Doc. 12 at 11.)

On August 11, 2019, Deng submitted an HNR informing NP Ortiz that he was about to run out of his KOP medications. (*Id* at 11.) Deng's medical records also reflected that his five medications were prescribed in February 2019 and were set to expire between August 7 and August 15, 2019. (Doc. 28-4 at 3.) On August 18, 2019, he sent another HNR to medical informing them that he had not received his medications and had been without his medications for five days. (Doc. 12 at 11.) The next day, Deng received a response from a medical staff member informing him that "provider notified to renew all meds." (*Id.*) Deng did not receive his medications.

On August 20, 2019, Deng spoke to Nurse Westlake when she came through the unit; she told Deng that she would notify NP Ortiz again about the medications. (*Id.* at 12.) Thereafter, Deng still did not receive his medications. (*Id.*)

On August 28, 2019, Deng submitted an informal complaint about the issue and wrote that he had been without his medications for 17 days and counting. (*Id.*) There was no response to the informal complaint. (*Id.*)

On September 7, 2019, Deng submitted an HNR requesting to see a doctor or nurse immediately because he did not feel well; he wrote that he had been experiencing dizziness, fatigue, headaches, and blurry vision for over a week due to unstable blood

sugar levels. (*Id.*) By this time, Deng had been without his prescribed medications for over 25 days. (*Id.*) Deng was not seen by medical staff in response to his HNR. (*Id.*)

On September 8, 2019, Deng submitted an emergency grievance on the issue; he wrote that he had been without his medications for 27 days and had been suffering symptoms for the last two weeks. (*Id.*)

Deng finally received his medications on September 14, 2019—32 days after his initial request. (*Id.*)

On March 16, 2020, Deng submitted a request for two eye drops—Latanoprost and Timolol—because he had run out of both. (Doc. 31 at 1.) On March 20, 2020, Deng received the Timolol, but he did not receive the Latanoprost. (*Id.*)

On March 17, 2020 and March 21, 2020, Deng submitted two separate requests to medical for Simvastatin (the equivalent of Atorvastatin). (*Id.* at 2.)

On March 25, 2020, Deng submitted a request for Aspirin. (*Id.*)

On March 26, 2020, Nurse Sekayi Williams entered a note in Deng's medical record documenting Deng's report that he had submitted a letter informing the provider he needed Latanoprost and Timolol; that he received Timolol on March 20; that he also sent a request for a Simvastatin refill but received no response; and that he also needed Aspirin. (Doc. 28-5 at 2–3.) The medical record shows that NP Ortiz conducted a practitioner review of this medical record, apparently on the same day, as no other date is indicated in the practitioner review section of the medical record. (*Id.* at 4.)

On March 27, 2020, Deng submitted another HNR to medical requesting Metformin because he had run out. (Doc. 31 at 2.)

On April 5, 2020, Deng submitted an informal complaint informing the provider that he had been out of most of his KOP medications, including Metformin—the main medication to treat his diabetes—for nine days. (Doc. 23 at 2.) There was no answer to the informal complaint. (*Id.*)

On April 15, 2020, Deng filed the pending Motion for Preliminary Injunction. (Doc. 23.)  The Court ordered Defendants to respond to the Motion by April 27, 2020. (Doc. 24.)

On April 18, 2020, a medical order was placed for Metformin.  (Doc. 28-1 at 2.) On April 21, 2020, Deng received the Metformin.  (*Id.*)

On April 19, 2020, Deng submitted an emergency grievance about the medication issue.  (Doc. 31 at 4.)

On April 27, 2020, Defendants moved for an extension of time to file a response to Deng's Motion for Preliminary Injunction.  (Doc. 25.)  The Court granted an extension to April 30, 2020.  (Doc. 26.)

On April 28, 2020, medical orders were placed for Latanoprost drops, Atorvastatin, and Aspirin 81 mg.  (Doc. 28-1 at 2.)  On April 30, 2020, Deng received these three medications.  (Doc. 31 at 2.)

**IV.   Discussion**

**A.     Likelihood of Success on the Merits**

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).  Deliberate indifference may be shown when prison officials "deny, delay or intentionally interfere with medical treatment[,]" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990), or where prison officials fail to respond to a prisoner's pain or possible medical need.  *Jett*, 439 F.3d at 1096; *see Estelle v. Gamble*, 429 U.S. 97 at 104–05 (1976) (prison officials act with deliberate indifference when they "intentionally interfer[e] with . . . treatment once prescribed").  A prisoner must also demonstrate harm caused by the indifference.  *Jett*,

- 6 -

1    439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

         Defendants do not challenge that Deng has a serious medical need. (*See* Doc. 28.) Diabetes constitutes a serious medical need. *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). Deng's other conditions—glaucoma and hypertension—are also serious medical needs. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (stating that monocular blindness is a serious medical need, and noting that "other courts have held that similar and even less severe losses of vision are serious medical needs"); *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) ("glaucoma may constitute a serious medical condition"); *Lozano v. Rose*, No. CV 16-764-JVS (AGR), 2016 WL 11523593, at *5 (C.D. Cal. Nov. 9, 2016) (the prisoner's diabetic retinopathy and glaucoma support a serious medical need). Due to his diagnosed medical conditions, Centurion classified Deng as a patient requiring chronic care. (Doc. 12 at 11; *see* Doc. 28-3 at 2–3.) Thus, Deng establishes that he has a serious medical need.

         The record shows that medications prescribed to treat Deng's diabetes and other chronic conditions have repeatedly been delayed, and the delays are significant. In August 2019, multiple medications were delayed for 32 days, despite Deng notifying medical staff via HNRs and grievances that he needed his prescribed medications. Then in March–April 2020, despite HNRs notifying medical staff of the need to refill or renew his medications, and medical records documenting that Deng's medications were expiring, Deng was subject to a 25-day delay in receipt of Metformin, a 45-day delay in receipt of Latanoprost, a 40-day delay in receipt of Atorvastatin, and a 36-day delay in receipt of Aspirin. (Doc. 31 at 2.) Defendants proffer no explanation for the delays, nor do they produce any evidence that efforts were made to timely respond to Deng's repeated requests for medication renewals and to his serious need for medications. *See Richmond v. Huq*, 885 F3d 928, 942 (6th Cir. 2018) (defendant doctor may be deliberately indifferent where doctor was aware of the prisoner's serious need for

1  medication but failed to take reasonable steps to ensure the prisoner timely received such
2  medication).
3  Finally, Deng avers that these delays caused him to suffer harm, including
4  dizziness, fatigue, headaches, and blurry vision. (Doc. 11 at 17.)
5  On this record, Deng establishes serious questions going to the merits, if not a
6  likelihood of success of the merits of his deliberate indifference claims against
7  Defendants.[2] *See Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)
8  ("[s]erious questions need not promise a certainty of success, nor even present a
9  probability of success, but must involve a fair chance of success on the merits") (internal
10  quotation omitted).

### B.  Irreparable Harm

Deng must demonstrate that absent an injunction, he will be exposed to irreparable harm.  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction); *see Winter*, 555 U.S. at 22.  To support a mandatory preliminary injunction for specific medical treatment, a plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674.  "[T]here must be a presently existing threat of harm, although injury need not be certain to occur." *Villaneuva v. Sisto*, CIV S-06-2706

---

[2] In his Reply, Deng argues that he "is likely to succeed on the merits if he decided to file a second Eighth Amendment medical claim based on the facts presented" in his Reply regarding the delays in medication in March–April 2020. (Doc. 31 at 6.) To the extent Deng requests injunctive relief in the form of an order directing Defendants to timely provide his prescribed medication, this request is related to the underlying claim in his Second Amended Complaint, and his facts regarding events arising in 2020 concern the same allegedly unconstitutional conduct by Defendants. Because Deng seeks injunctive relief, the Court considers facts that arise after the filing of his Second Amended Complaint, including the March–April 2020 events and any delays in the provision of medication that may occur in the future. *See Farmer*, 511 U.S. at 846. Therefore, Deng need not file a new lawsuit to challenge Defendants' continuing conduct.

- 8 -

LKK EFB P, 2008 WL 4467512, at *3 (E.D. Cal. Oct. 3, 2008) (citing *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997)).

Deng acknowledges that, as of April 30, 2020, he received all his prescribed medications. (Doc. 31.)  Because he has received his prescribed medications, which was part of the injunctive relief requested, Deng cannot show a presently existing threat of irreparable injury, and this request for relief is moot.

Deng also requests relief in the form of an order directing his transfer to a lower-level custody unit where he will have a better chance at receiving adequate medical care during the current pandemic. (*Id.* at 6.)  He submits that, as a diabetic, he is at increased risk of infection of COVID-19, and there are confirmed cases of COVID-19 in his unit. (*Id.*; Doc. 23 at 2.)  Defendants assert that Deng is simply speculating about possible outcomes for individuals with diabetes who may be exposed to COVID-19 and that his allegations do not show that he is likely to suffer any harm related to the virus. (Doc. 28 at 3–4.)

Deng's allegations and concern over his increased risk for illness from COVID-19 are not unfounded.  The Centers for Disease Control and Prevention (CDC) has expressly stated that people with Type 2 diabetes are at increased risk of severe illness from COVID-19, and, based on the information the CDC currently has, people with hypertension or high blood pressure may be at increased risk for severe illness from COVID-19.[3]  As the record shows, in the midst of this pandemic, Deng was forced to go weeks without necessary prescribed medications, including diabetic medication, which put his health further at risk.  Defendants do not deny that numerous individuals in Deng's unit have tested positive for COVID-19. (*See* Doc. 28.)  In fact, the ADC website

---

[3] *See Coronavirus Disease 2019, People with Certain Medical Conditions*, CDC, (updated July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 22, 2020).

documenting cases system wide shows that, as of July 27, 2020, 11 prisoners in Deng's unit have tested positive for COVID-19.[4]

But a prisoner generally does not have a constitutional right to be housed at a particular institution or to receive a particular security classification. *See Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997). Moreover, as noted by Defendants, an order to transfer Deng to another unit would be directed to ADC personnel who are not parties to this action and over whom the Court does not have jurisdiction. *See* Fed. R. Civ. P. 65(d)(2) (an injunction binds only the parties, their officers, agents, servants, employees, and attorneys, and other persons actively in concert or participation with them); *see also Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) (a court may issue an injunction only "if it has personal jurisdiction over the parties").

Deng also fails to show how transfer to another unit at a lower custody classification may alleviate the risk to him posed by COVID-19. His medical conditions put him at increased risk of severe illness from COVID-19 regardless of where he is housed. The fact that 11 prisoners in his unit have confirmed cases of COVID-19 is concerning; however, unfortunately, cases of COVID-19 have been confirmed in a majority of ADC facilities.[5] Further, because Centurion is the contracted healthcare provider at most ADC facilities, Deng cannot obtain healthcare from a different provider by transferring to a different unit.

For the above reasons, the Court will deny Deng's Motion for Preliminary Injunction without prejudice to refiling. The Court expects that Deng will renew his Motion immediately if Defendants fail to timely provide his prescribed medications.

---

[4] *See Arizona Dep't of Corrs. Rehab. & Reentry COVID-19 Dashboard*, https://corrections.az.gov/adcrr-covid-19-dashboard (last visited July 27, 2020).

[5] *See supra* note 4. The ADC COVID-19 Dashboard shows that only 3 out of 18 facilities have zero confirmed cases of COVID-19.

**IT IS ORDERED that** reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Preliminary Injunction (Doc. 23), and the Motion is **denied without prejudice**.

Dated this 3rd day of August, 2020.

*James A. Teilborg*
Senior United States District Judge